C. W. Greeson v. Commissioner.
C. W. Greeson v. Commissioner
Docket No. 4100.
United States Tax Court
1945 Tax Ct. Memo LEXIS 179; 4 T.C.M. (CCH) 605; T.C.M. (RIA) 45201; June 1, 1945
*179 1. In 1932 petitioner purchased, either alone or jointly with another person, five trac-trucks at a total cost of $32,500. Being still indebted to the seller for unpaid purchase price for these machines, petitioner and such other person in 1938 conveyed them back to the original seller in consideration for the complete cancellation of such unpaid indebtedness. On the same day the seller, who had repossessed the machines, resold them to the petitioner for $11,029.92 which was the price at which the machines were repossessed, part of which petitioner paid in cash and executed his promissory notes for the balance. Held, the cost of the machines for computing gain or loss thereafter on their disposal or for depreciation when used in petitioner's business was $11,029.92 as the Commissioner has determined. 2. In 1940 petitioner entered into a joint venture agreement with J. B. Robinson and H. M. Young, Jr. to carry out part of a contract which the partnership of Robinson and Young had entered into with the Federal Government to do certain levee construction in the State of Mississippi. Each party to the joint venture was to rent certain machinery and equipment, under a rental-purchase *180 contract, to the joint venture and was to share in one-third of the profits and was obligated to pay one-third of the losses. Held, that in computing his net income, petitioner is entitled to take depreciation deductions on all the equipment and machinery used in the business of the joint venture which he furnished, he still being the owner thereof. 3. In 1941 petitioner paid out $2,637 to the Bucyrus-Erie Company, manufacturers of a machine which petitioner had purchased from them in a prior year. Petitioner claims such payment as a business expense deduction for necessary repairs to the machine. Petitioner has not shown the nature of the parts for which this payment was made nor anything by which this Court could determine that such expenditures were not made for capital improvements to the machine. Held, the Commissioner is sustained in his disallowance of this claimed deduction because of the lack of evidence to show that he committed error. F. E. Hagler, Esq., 2804 Sterick Bldg., Memphis 3, Tenn., for petitioner. John W. Alexander, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax for the years 1940 and 1941 in the respective amounts of $1.19 and $4,672.04. The deficiencies result from several adjustments made by the Commissioner in the income tax returns filed by petitioner for 1940 and 1941. Some of these adjustments are not contested. The sum of $1,470.12 of the total of $4,673.23 deficiencies determined has been conceded by petitioner and was paid before the petition in this proceeding was filed. The adjustments which petitioner does contest are described in appropriate assignments of error in the petition. The issues raised by these assignments of error are stated in petitioner's brief as follows: 1. Did the petitioner purchase five Euclid Trac-Truks on March 1, 1938, for $32,500; or were these said trac-truks purchased *182 on March 7, 1939, for $11,029.92? 2. Is the petitioner entitled to a deduction for one-third of the depreciation on equipment contributed by him and by Robinson & Young to a partnership, or joint venture, entered into by a written contract on August 13th, 1940? If not, is the petitioner entitled to the depreciation on his own equipment which he contributed to the partnership? 3. Is the petitioner entitled to a deduction in the amount of $2,637, paid by him through Robinson & Young on March 18, 1941, for repair parts for a Bucyrus Erie dragline? Respondent states the issues in his brief in substantially the same manner as petitioner has stated them. Findings of Fact The petitioner is an individual with his residence and principal place of business at Baton Rouge, Louisiana. The returns for the taxable years involved were filed with the Collector of Internal Revenue for the District of Louisiana. The petitioner is a levee and road contractor and has been engaged in that business for approximately ten years. Issue 1 On March 1, 1938, the petitioner, either individually or with Ray J. Hidalgo, purchased from Richard A. Trippeer, under a lease agreement and for a consideration *183 of $32,500, the following described Euclid trac-truks bearing serial numbers as indicated: 1 Z.W.C.L.
171
1 Z.W.C.L.
162
1 Z.W.C.L.
172
1 Z.W.C.L.
14
1 Z.W.C.L.
12
The petitioner and Hidalgo sold or re-leased the said five trac-trucks back to Richard A. Trippeer on March 7, 1939, the consideration being $11,029.92, the amount owed on the trac-truks by Greeson and Hidalgo on the date of the sale. When Greeson and Hidalgo sold or re-leased the said five trac-truks to Trippeer on March 7, 1939, all of the $11,029.92 owed by them to Trippeer for the trac-truks was due and owing and they were unable to pay. Trippeer accepted the trac-truks in full satisfaction of the payment of all indebtedness due to him by the petitioner and Hidalgo. Under date of March 7, 1939, Trippeer sold to the petitioner alone by a sale with mortgage the same Euclid trac-truks which Greeson and Hidalgo formerly owned, the consideration being $11,029.92. The consideration was stated in the "Sale with Mortgage" agreement as follows: "* * * ELEVEN THOUSAND TWENTY-NINE AND 92/100 ($11,029.92) DOLLARS, of which amount the purchaser paid in ready cash the sum of two thousand twenty-nine *184 and 92/100 ($2,029.92) Dollars, receipt of which the vendor hereby acknowledges and grants full discharge and acquittance therefor, and for the balance of said purchase price, to-wit, the sum of nine thousand and no/100 ($9,000.00) Dollars, the purchaser has made and subscribed his five (5) certain promissory notes numbered from one (1) to to five (5), inclusive, for two thousand and no/100 ($2,000.00) Dollars each, except the last one which is for one thousand and no/100 ($1,000.00) Dollars, all payable to his own order and by him indorsed in blank, * * *." When Trippeer resold the trac-truks to Greeson on March 7, 1939, Greeson was out of work and he was endeavoring to enter into a profitsharing undertaking with the partnership of Robinson and Young providing the partnership would finance the work. Robinson and Young were contractors and residents of Baton Rouge, Louisiana. As a start in effectuating the profitsharing agreement Robinson and Young advanced the $2,029.92 which Greeson was required to pay to Trippeer in connection with his purchase of the trac-truks from Trippeer on March 7, 1939. The five trac-truks were trade by petitioner in 1940 in part payment for five new ones *185 of a later model at a price of $13,700 each, plus the freight. The five trac-truks first above mentioned were traded in at a price of $17,650 for all the five. Issue 2 On August 13, 1940, the petitioner and Robinson and Young entered into the following contract: Baton Rouge, Louisiana August 13th, 1940 "Robinson and Young hereby agrees to sublease to C. W. Greeson, J. B. Robinson and H. M. Young, Jr. ITEM L-357-5, Lake Charles Miss. L. S. berm, topping, rdwy. embkt. and wash repairs, approximately 715,000 cu. yds. as per contract dated with the WAR DEPARTMENT, U.S. Engineer Office, Memphis, Tenn. at unit prices as shown in contract less Two (2%) per cent of the total amount of FINAL ESTIMATE. Robinson and Young are to pay bond premium and finance the said work. "The above mentioned parties agree to rent from C. W. Greeson on a rental purchase agreement: "5 Model F. Euclid Trac Truks recently purchased from the Euclid Road Machinery Company upon the following terms: "Five Thousand and no/100 ($5,000.00) Dollars per month for five months with a standby of a renewal of the next eight notes provided Greeson, Robinson and Young pay the interest and one thousand and no/100 *186 ($1,000.00) Dollars each on the first four notes and get the benefit of the agreement with Euclid Road Machinery Company to care for the next four notes, it being understood that the said C. W. Greeson, J. B. Robinson and H. M. Young, Jr. are to have the right to purchase the said five Euclids for the original purchase price and that all amounts previously paid as rent are to be applied on the purchase price. "1 A. C. Tractor and Bull Dozer purchased from Allis-Chalmers Tractors and Road Machinery as per order date, August 5th, 1940, upon the following terms: "$483.33, it being understood that the said C. W. Greeson, J. B. Robinson and H. M. Young, Jr. are to have the right to purchase the said Tractor and Bull Dozer for the original purchase price and that all amounts previously paid as rent are to be applied against the purchase price. "It is understood that the said parties mentioned above are to rent from Robinson and Young, on a rental purchase agreement: 1 Northwest Dragline No. 95
$33,719.13
1 Carbo Bucket
808.00
1 Tractor & Bulldozer
5,151.00
1 Gasoline Air Compressor
151.50
1 La Choate Roller
1,204.69
TOTAL
$41,034.32
"The following terms *187 to apply, "$17,430.90 to be paid to Northwest Engineering Co. for account of Robinson and Young in payment of seventeen notes of $1,000.00 each and one note of $430.90, all dated August 15, 1940, bearing interest at 6% per annum, the first note being due September 15th, 1940, and one on the 15th of each month thereafter. On the remaining $23,603.42, there is to be paid $1,000.00 per month or any further additional amount the said three parties may wish to pay. "After all expenses, rentals, purchases, etc. are paid, said C. W. Greeson, J. B. Robinson and H. M. Young, Jr. are to own a one-third (1/3) interest of the net profit and any or all equipment paid for as outlined above. C. W. Greeson, J. B. Robinson, H. M. Young, Jr." The machinery and equipment above described which Robinson and Young were to bring into the joint venture under a rental purchase agreement and which is noted in the joint venture agreement as having a total cost of $41,034.32 was listed on the partnership return of Robinson and Young filed for the year 1941 as having costs as follows: Cost as shown in
depreciation
schedule in re-
turn of Robin-
son & Young
Machinery
for 1941
1 Northwest Dragline No. 95
$32,500.00
1 Carbo Bucket
808.00
1 Tractor and Bulldozer
5,151.00
1 Gasoline and Air Compressor
151.50
1 La Choate Roller
1,204.69
$39,815.19
*188 For the year 1941 Robinson and Young claimed full depreciation on the machinery and equipment just above described on their own partnership return which they filed for that year. They also had a depreciation schedule on the partnership return filed for that year designated as "Robinson and Young and C. W. Greeson" in which they showed depreciation of $17,552.44. This depreciation was apportioned on the schedule as follows: Robinson & Young
2/3 of $17,552.44 equals
$11,701.62
C. W. Greeson
1/3 of $17,552.44 equals
5,850.82
Total
$17,552.44
The principal item of equipment which figured in the computation of the foregoing depreciation of $17,552.44 was five Euclid dump tractors and trucks which had been purchased by petitioner at a cost of $69.500 and had been turned into the joint venture by petitioner and were being depreciated upon the basis of a useful life of five years from the date of purchase. There were other smaller items listed in the schedule. All of said machinery and equipment above listed were used in the business of the joint venture from August 13, 1940, through the calendar year 1941. Petitioner did not keep any books of his own and his *189 income tax return was prepared for him by the bookkeeper of Robinson and Young. On this income tax return prepared for petitioner by the accountant of Robinson and Young, petitioner took no depreciation on the machinery and equipment furnished to the joint venture by Robinson and Young and only took one-third depreciation on the machinery and equipment which he furnished to the joint venture. This was because he accepted as correct the return which had been prepared for him by the bookkeeper of Robinson and Young. Issue 3 The petitioner purchased a dragline from the Bucyrus-Erie Company in 1932. The purchase price of this machine has not been shown. In 1941 Robinson and Young paid for the petitioner, and charged to his account, $2,637 which was owing by petitioner to the manufacturers of this machine for some parts and improvements which were designed to bring the old machine up to something like a comparable efficiency with a new machine which the manufacturers were then putting on the market. The total amount of this account which Bucyrus-Erie Company was claiming against petitioner was $5,274, but part of it was for defective material and poor workmanship and the petitioner *190 talked Bucyrus into cutting the bill in half. Then Robinson and Young paid the $2,637 that had been agreed upon and took it out of the money due petitioner from Robinson and Young. Opinion BLACK, Judge: The parties seem to agree that the issues which we have here to decide are largely issues of fact. The evidence introduced at the hearing was not altogether satisfactory and some of it was confusing. However, it is our duty to carefully sift this evidence and endeavor to arrive at correct conclusions on the issues which have been presented to us for decision. This we have done. Issue 1. This issue involves the cost basis to be used of five Euclid trac-truks, originally purchased in 1932 for $32,500. Petitioner contends that he is entitled to use this basis of cost instead of having to use a basis of $11,029.92 for which he repurchased the trucks in 1938. Petitioner's argument in support of a basis of $32,500 is that the conveyance in 1938 by Hidalgo and himself to Trippeer and the reconveyance on the same day by Trippeer to petitioner was a mere wash sale and should be disregarded, and petitioner should be allowed to thereafter continue the use of a cost basis of $32,500 for *191 these five trac-truks. We do not think the facts sustain petitioner in this contention. The documentary evidence in particular is against him. Petitioner did not introduce in evidence the circumstances of his purchase of the trucks in 1932. We do not know whether they were purchased by petitioner alone or by himself and Hidalgo jointly. But even if it be assumed they were purchased by petitioner alone, it is clear that at some time prior to 1938, Hidalgo acquired some kind of an interest in the five machines. What that interest was, the facts do not show. It certainly seems clear that on whatever interest Hidalgo did own, petitioner would not be entitled to take depreciation or use as a basis for his own loss or gain upon their disposal. It took a conveyance by petitioner and Hidalgo to Trippeer to extinguish Hidalgo's interest. The transaction was more than a wash sale. The sale with mortgage from Trippeer back to petitioner of these five trucks shows that Trippeer required petitioner to pay $2,029.92 in cash and execute his individual notes for $9,000 upon which he was individually obligated. There is no warrant in law for us to disregard these transactions and to say they only *192 amounted to a wash sale. It may well be that when petitioner and Hidalgo conveyed the trucks back to Trippeer in 1938, petitioner had a loss. If so, that was the year when it should have been deducted. We have no information as to what, if any loss, resulted to petitioner in this transaction, and besides, we do not have the year 1938 before us. On this issue respondent is sustained. Issue 2. We think petitioner must be sustained in his alternative contention as to this issue. It is clear that on August 13, 1940, J. B. Robinson, H. M. Young, Jr., and petitioner entered into a joint venture to perform part of a levee contract which the partnership of Robinson and Young had with the War Department of the United States Government. By the terms of this joint venture, petitioner was to furnish, under a rental purchase agreement, the use of certain machinery and equipment to the joint venture, and Robinson and Young were to furnish, under a similar rental purchase agreement, the use of certain equipment to the joint venture. This part of the agreement was carried out. There is no evidence in the record that the parties to the joint venture exercised their option to purchase the machinery *193 and equipment furnished by the respective parties, and to have applied on the purchase price of such property all rentals paid by the joint venture during the taxable year. So far as the record shows, the rentals were paid and each party continued to own the machinery which he had furnished to the joint venture. This being so, the joint venture, in computing its net income, was not entitled to deduct depreciation. Depreciation allowances go only to owners of property. So far as the record shows, petitioner remained the owner of the machinery and equipment which he brought into the joint venture and Robinson and Young remained the owner of that which they brought into the joint venture. Depreciation deductions should be computed on the basis of this ownership. When he came to compute depreciation on the machinery and equipment used by the joint venture in 1941, the accountant for Robinson and Young computed for the account of Robinson and Young 100 percent of the depreciation on the property which they had contributed to the joint venture and computed for the account of Robinson and Young 2/3 of the depreciation on the machinery and equipment furnished by petitioner and 1/3 for the *194 account of petitioner. We think this was an incorrect method. Petitioner argues, correctly we think, that either petitioner is entitled to 100 percent depreciation on the machinery and equipment which he furnished to the joint venture, and none at all on the property furnished by Robinson and Young, or else he is entitled to 1/3 depreciation on all the machinery and equipment used in the joint venture. We think petitioner is entitled to a 100 percent deduction of a proper depreciation computation on the property which he owned and which was being used in the joint venture and is not entitled to any of the depreciation on the property owned by Robinson and Young. True, this latter property, as well as the property furnished by petitioner, was in use by the joint venture, but only on a rental purchase agreement. There is no evidence in the record which shows that the option to purchase by the joint venture was exercised. It was brought out at the hearing that the reason petitioner deducted on his income tax return for 1941 only 1/3 depreciation on the equipment which he furnished to the joint venture and none at all on the property furnished by Robinson and Young, was because the *195 accountant for Robinson and Young made out his income tax return and he signed it when it was presented to him. It is clear that the accountant for Robinson and Young, when he went to make out the income tax returns for 1941 of petitioner, and of Robinson and Young, made them out in a manner which favored Robinson and Young and did not correctly reflect the depreciation deduction to which petitioner was entitled. Since we now have the issue before us it is our duty to correct the error in so far as petitioner is concerned. If Robinson and Young have received a larger deduction for depreciation than they are entitled to receive that is an administrative matter for the Commissioner to correct. We do not have Robinson and Young before us. The cost of the property furnished by petitioner to the joint venture does not appear to be in controversy, except as it may be affected by our decision on issue 1. Neither is the rate of depreciation in dispute. In a recomputation under Rule 50, petitioner should be allowed a depreciation deduction based on 100 percent of the depreciation on the property which he furnished to the joint venture. He should not be allowed any depreciation on the property *196 furnished to the joint venture by Robinson and Young. This holding is, as we have said, based on ownership of the property during the taxable years. Issue 3. Petitioner is claiming this deduction of $2,637 on the basis that it represented the cost of repairs which petitioner had incurred in prior years but was not paid until 1941. Of course if such amount did in fact represent the cost of mere repairs, not capital in their nature, to its No. 45 Bucyrus machine, the amount thereof would be deductible. Petitioner has proved clearly enough that the amount in question was paid for his account and charged to him by Robinson and Young, but he has not proved to our satisfaction that the $2,637 represented the cost of mere repairs. For example, petitioner concedes that the account was originally $5,274 but on account of some inferior workmanship and defective materials, the Bucyrus-Erie Company in 1941 reduced the account by 50 percent. His testimony respecting the amount paid and the items that went to make up the original bill was as follows: Q. How did it happen you only paid $2,637.00 to settle that? A. Part of it was defective material and poor workmanship and I talked Bucyrus *197 into cutting it in half and Robinson and Young paid that and took it out of the money due me. The petitioner did not state or indicate what percentage of the original bill resulted from "defective material and poor workmanship" but simply testified that the bill was paid for him by Robinson and Young. The testimony of M. P. Phillips, bookkeeper of Robinson and Young, was that the partnership paid a firm of attorneys at Monroe $2,637 but he was unable to state for what the check was issued since the records of Robinson and Young did not contain that information. H. M. Young, Jr., was interrogated respecting this particular item and his testimony upon cross examination was as follows: Q. Are you acquainted with this $2,637 payment that was made to the Bucyrus-Erie in 1941? A. Charlie owed those people some money and they kept trying to make him pay it and finally he told me he was going up there and make a compromise settlement with them. To go back a little further, Mr. Alexander, he talked to us about that machine. It was what they call a No. 45 Bucyrus. The next model that came out was a No. 46 and it had a lot of improvements over the model 45. Q. You mean this $2600 *198 was for the purchase of the piece of machinery? A. Let me lead up to that. Charlie told me before we had any business that the Bucyrus people were going to ship castings down there to put the new improvement on the machine. Every time they would write us after they found that he was working for us, he would say, "I don't owe them. They agreed to make that improvement on that machine." Q. What was the nature of that improvement they made? A. It was some heavy casting on it they put on to make it a 46. Q. The machine was all right except they were attempting to improve it? A. Yes, sir, and why Charlie wouldn't pay them was that he said they were supposed to make that and he made a compromise settlement later and asked us to pay them the $2600. No effort was made by the petitioner to change Young's testimony upon this particular point nor was Greeson again called to the stand in order to endeavor to explain away the testimony of Young. For aught we know some, at least of the $2,697 payment, represented capital expenditures and, therefore, not allowable deductions from income. The testimony of Young seems to indicate that the account did represent capital expenditures. On *199 an issue of this kind the taxpayer must offer the essential facts which will show the nature of the expenditure. See Mertens Law of Federal Income Taxation, section 25.17. Petitioner in claiming this deduction from income assumed the burden of proof to sustain it. It was his duty to give us the facts which would show for just what the expenditure was made. We consider the evidence which is in the record entirely inadequate for this purpose. Therefore, respondent must be sustained for lack of evidence to show that the Commissioner committed error in disallowing the item in question. Decision will be entered under Rule 50.